Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0438 | **DATE** | 5/8/2001 |
| **CASE TITLE** | Patricia Garza, et al vs. Chicago Transit Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 24 May 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' Motion for Approval of Notice is granted, subject to the modifications discussed in this opinion.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAY 11 2001 | | |
| | Notified counsel by telephone. | | date docketed | | 35 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| WAP | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

MAY - 8 2001

Judge Harry D. Leinenweber
U. S. District Court

PATRICIA GARZA, WINSTON
PIERCE, STAN JENSEN and LARRY
JACKSON, JR., on behalf of
themselves and others
similarly situated,

     Plaintiffs,

 v.

CHICAGO TRANSIT AUTHORITY,

     Defendant.

Case No. 00 C 0438

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiffs Patricia Garza, Winston Pierce, Larry Jackson and Stan Jenson are current employees of the Defendant, Chicago Transit Authority (the "CTA"), employed in the rail or elevated operations area. Plaintiffs brought this suit against the CTA for failure to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 207, as amended. Before the court is the Plaintiffs' motion for approval of notice to similarly situated persons.

## INTRODUCTION

Plaintiffs are employees of CTA's rail system. In their complaint, they contend that CTA has a policy and practice of requiring employees to achieve various qualifications for positions as motormen, switchmen, flagmen, and towermen, and that some, but not all, of the required training time is paid. In Count I,

Plaintiffs contend that all such training time ought to be considered compensable work time, and where such working time combined with required shifts exceeds 40 hours per week, paid at the FLSA overtime rate. Plaintiffs further contend that CTA has a policy of requiring employees who have been absent from assignments to requalify for their positions (Count II) and of requiring employees who have erred or violated an operational rule (Count III) to requalify for their position or to attend additional training without compensation in violation of the FLSA. Further, Plaintiffs contend that when employees who are certified on one line are transferred to another line, CTA requires them to undergo training without compensation in violation of the FLSA (Count IV). Finally, Plaintiffs allege that CTA requires employees that it promotes to attend additional training in the new position without compensation in violation of the FLSA (Count V). Plaintiffs assert that approximately 600 persons have already "opted-in" or joined this action, and that all rail operation employees who completed or were required to complete training within these categories ought to be permitted to join this action.

Plaintiffs have proposed notice to be disseminated to all potential plaintiffs and request that the court order CTA to either post notice at CTA terminals or insert the notice in the paychecks of all currently employed persons who have not yet opted into this action and to forward such notice to persons who have retired or

left CTA employment since 1997 or provide Plaintiffs' counsel with their current or last known addresses for the purpose of forwarding notice.

**DISCUSSION**

CTA's first objection is that the Plaintiffs are asking this court to order the issuance of notice to hundreds of CTA employees without regard to whether their training took place in addition to a 40-hour work week or not. To the extent that CTA argues that the notice must be more specifically directed at employees who have completed the overtime training in addition to a 40-hour work week to qualify as "overtime," CTA is correct and any notice would have to specify that the case was limited to employees who attended training in addition to a 40-hour work week.

Fundamentally, the parties disagree as to the standard the court should employ in determining whether notice should be sent. It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 110 S. Ct. 482 (1989). Thus, the question is whether the appropriate circumstances exist for the court to exercise its discretion in this matter. CTA argues that the court should treat this motion as a motion for class certification under Federal Rule of Civil Procedure 23 and use the numerosity, commonality, and adequacy tests. *See, e.g.,*

*Garcia v. Elite Labor Svc.*, No. 95 C 2341, 1996 WL 559958, *2 (N.D. Ill. Sept. 30, 1996). The rationale behind using Rule 23 is that Congress did not intend to create a separate and new structure for FLSA actions. *See Moony v. Aramco Svcs. Co.*, 54 F.3d 1207, 1212-1216 (5th Cir. 1995).

In contrast, Garza argues that the § 216(b) notice process requires the court to engage in a preliminary review to determine if there are persons "similarly situated" to the Plaintiffs and to describe accurately the group of such persons to whom notice ought to be directed. In essence, there would be a two-step process where first notice is sent to potential class members. Then, after discovery is complete, the court would determine whether the class should be restricted based on the "similarly situated" requirement of the FLSA. *See Lusardi v. Zerox Corp.*, 118 F.R.D. 351, 358 (D.N.J. 1987). The logic of the second approach is that, in contrast to class actions under Rule 23, members of the FLSA representative action "opt in"; therefore, the stricter Rule 23 test is irrelevant and unnecessary because, at this stage, the potential class is uncertain and self selective. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579 (7th Cir. 1982); *Jackson v. Go-Tane Servs. Inc.*, 200 WL 1221642, *3 (N.D. Ill. Aug. 21, 2000); *Lusardi*, 118 F.R.D. at 358.

Recently, another court in this district followed the second approach and did not consider the requirements Rule 23 in an action

under Section 216(b). In *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, *1 (N.D.Ill. Feb. 8, 2000), the court simply stated that a collective action under § 216(b) differs from a class action under Rule 23, citing *Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982). The court explained that a collective action can be brought under § 216(b) as long as the plaintiff is "similarly situated" with those potential claimants he wishes to represent, and no claimant shall be a member of or bound by the action unless he or she "opts in" to the action. 29 U.S.C. § 216(b).

The court finds that reasoning persuasive and adopts it. *See also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D. N.Y. 1998) (plaintiffs meet their burden of showing that they are "similarly situated" by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law"); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 1999 WL 1081357, *2 (D. Or. Dec. 1, 1999)("the 'similarly situated' standard under Section 216(b) is less stringent that the requirements under FED. R. CIV. P. 23(b)(3)" requiring only a factual nexus which binds them together as victims of an alleged policy or practice.) *But see, Burns v. Village of Wauconda*, No. 99 C 800, 1999 WL 529574, *3 (N. D. Ill. July 15, 1999).

In response to the Plaintiffs' motion for notice, CTA argues (1) the named Plaintiffs do not assert in the complaint that they fall into the categories of employees described in Counts II - V of the complaint, and thus they are not "similarly situated" to any employees who do fall within those categories of employees; (2) the named Plaintiffs do not assert that they took motorman or RTO training in addition to working 40 hours per week; (3) individual questions predominate as to switchman, towerman and flagman training because employees who have undergone such training have been paid dozens of pay rates for their work and put in a wide range of training houses depending on what line they work on and how many attempts at the training it takes them to qualify for a classification; (4) individual questions predominate because employees can get paid for 40 or more hours per week even though they do not necessarily work 40 hours or because employees undergo training during weeks where they do not otherwise work; and (5) another action in which rail operation employees sought overtime payment was settled in 1999, and some of the individuals who have filed consents in this case received a settlement in that case. CTA argues that given the wide variety of situations under which different employees complete the switch, tower, or flag training coupled with the wide range of pay rates, hours worked, and compensation for not working, the Plaintiffs are not similarly

situated with other workers and this case is not appropriate for class treatment.

The court has examined CTA's arguments and the evidence set forth in both parties' briefs and finds that Plaintiffs have demonstrated a sufficient factual nexus between their situation and the situation of other current and former rail employees. While CTA raises some concerns that may be important at a later stage of this case, Plaintiffs have submitted sufficient evidence demonstrating that they are all acting under the same CTA policies on training and compensation for that training. *See* Exh. A to Plaintiffs' Reply. That the Plaintiffs and other potential plaintiffs may have different jobs in the rail system, earn different amounts of money, and have attended different amounts or types of training does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay. *See, e.g., Realite,* 7 F. Supp. 2d at 307. This ruling, however, does not indicate that all of the employees who are given notice are similarly situated, as future discovery may demonstrate that they are not. At this point neither judicial economy nor the remedial purposes of the FLSA would be served by denying notice.

CTA has pointed out several defects in the Plaintiffs' proposed notice that must be addressed. CTA argues that the proposed notice goes beyond the scope of the complaint because it

states that any employee of the rail operations division of CTA may join "if he or she attended training or obtained qualifications without payment of all of the hours you expended in such effort" without regard to whether the training was in addition to a 40-hour work week or not. As previously stated, the court agrees, and Plaintiffs must limit the notice to those employees who have specifically undergone training in addition to a 40-hour work week.

Next, CTA argues that paragraph 1 of the proposed notice is improper. Paragraph 1 states that "If the Court rules in favor of the plaintiffs and you have sustained losses, you may be entitled to relief if you join this action." The court adopts CTA's proposed addition, and the court adds the following sentence to that paragraph: "If the Court rules in favor of CTA, you will be entitled to no relief if you join this action."

Further, CTA complains that the stated time frame for eligibility, which is 1997 to the present, is wrong and should be limited to the three years before a person filed his or her consent to become a party plaintiff. The court agrees, and the time frame should be modified accordingly.

Last, the Plaintiffs request that the court order CTA to insert the notice in the paychecks of all currently employed persons who have not yet opted into this action or to post it at CTA terminals. In this case, it is more appropriate to post the notice at CTA terminals. Further, Plaintiffs request that CTA

forward such notice to persons who have retired or left CTA employment since 1997 or provide Plaintiffs' counsel with their current or last known addresses for the purpose of forwarding notice. Regarding retired or former employees, the court finds that the latter is more appropriate.

## CONCLUSION

Plaintiffs' Motion for Approval of Notice is granted, subject to the modifications discussed in this opinion.

**IT IS SO ORDERED.**

                                   _____
                                   Harry D. Leinenweber, Judge
                                   United States District Court

Date: May 8, 2001